STATE OF NORTH CAROLINA v. MITCHELL JOHN PAKULSKI AND ELLIOT CLIFFORD ROWE, III

No. 407A89

(Filed 5 April 1990)

**Criminal Law § 980 (NCI4th)— felony murder—arrest of judgment on underlying felony—murder conviction reversed—sentencing on arrested judgment**

The trial court did not err by entering judgment and imposing sentence on convictions for felonious breaking or entering and felonious larceny where defendant was originally convicted of first degree murder on the felony murder theory;

judgment on the underlying felonies was arrested; the felony murder conviction was overturned on appeal; and the State subsequently prayed for judgment on the felonious breaking or entering and felonious larceny convictions. When judgment is arrested on predicate felonies in a felony murder case to avoid a double jeopardy problem, the guilty verdicts on the underlying felonies remain on the docket and judgment can be entered if the conviction for murder is later reversed on appeal and the convictions on the predicate felonies are not disturbed on appeal.

**Am Jur 2d, Criminal Law §§ 521, 524; Homicide §§ 72, 190.**

APPEAL by the State of North Carolina pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 95 N.C. App. 517, 383 S.E.2d 442 (1989), reversing the judgment of *Freeman, J.,* at the 28 March 1988 session of Superior Court, HAYWOOD County. Heard in the Supreme Court 13 March 1990.

*Lacy H. Thornburg, Attorney General, by William P. Hart, Assistant Attorney General, and John H. Watters, Assistant Attorney General, for the state-appellant.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellee Pakulski; Russell McLean, III for defendant-appellee Rowe.*

MARTIN, Justice.

The sole question raised on appeal is whether Judge Freeman erred in sentencing the defendants on the charges of felonious breaking or entering and felonious larceny after Judge Fountain had arrested judgment on these charges following a jury verdict of guilty on each. At the trial before Judge Fountain, defendants were convicted of murder in the first degree on the felony murder theory. We hold that Judge Fountain arrested judgment on the breaking or entering charge because it constituted the predicate felony for the conviction of murder in the first degree resulting from the same trial. We further conclude that he arrested judgment on the larceny charge because he mistakenly believed that it, too, was an underlying felony to the murder charge. On appeal of that trial, this Court reversed the felony murder conviction and remanded for a new trial. *State v. Pakulski,* 319 N.C. 562, 356 S.E.2d

319 (1987). A new trial resulted in a mistrial, and the state elected to pray for judgment on the breaking or entering and larceny convictions before the presiding judge, the Honorable William H. Freeman. We hold that following the reversal on appeal of the felony murder conviction, there was no legal impediment to entry of judgment and imposition of sentence on the valid verdicts of guilty of breaking or entering and larceny. Therefore, Judge Freeman did not err in imposing the challenged sentences.

The facts surrounding the crime itself have little bearing on this appeal and have been set out in detail by this Court in *State v. Pakulski*, 319 N.C. at 565-67, 356 S.E.2d at 321-22. In brief, the evidence tends to show that the defendants and a third accomplice broke into the offices of Dr. Guy Abbate of Waynesville on or about 16 September 1978 where they ransacked the office and stole a number of items including but not limited to Darvocet tablets, two kitchen knives, and a syringe-type device. While the perpetrators were in the office, a security guard arrived. A scuffle ensued and the guard, Mr. Willard Setzer, was shot in the back of the head with his own gun and died. Approximately $600.00 was taken from Mr. Setzer's body following the shooting, and defendants then fled to Ohio in Mr. Setzer's automobile.

We turn now to a review of the lengthy procedural history of the case, which has considerable bearing on the appeal before us. Although a Haywood County Grand Jury returned true bills of indictment against the defendants charging them with murder in the first degree on 17 September 1978, extradition litigation in Ohio delayed trial until May of 1984. *See Pakulski v. Hickey*, 731 F.2d 382 (6th Cir. 1984); *In re Rowe*, 67 Ohio St.2d 115, 423 N.E.2d 167 (1981). In the meantime, a Haywood County Grand Jury had returned additional indictments charging the defendants with robbery with a dangerous weapon, larceny of a motor vehicle, felonious breaking or entering, larceny, and conspiracy to commit murder and conspiracy to break or enter. The first trial ended in a mistrial, and the cases were retried at the 23 July 1984 session of court. That trial resulted in a mistrial as well.

Defendants were tried for a third time at the 29 October 1984 session of the Superior Court for Haywood County resulting in convictions of both defendants on the charges of murder in the first degree, larceny of a motor vehicle, felonious breaking or entering, felonious larceny, robbery with a firearm, and conspiracy to

commit felonious breaking or entering and larceny. After the jury recommended life sentences for the murder, the Honorable George M. Fountain, judge presiding, imposed a life sentence, a consecutive term of ten years for larceny of a motor vehicle, and a concurrent term of ten years for conspiracy to commit breaking or entering and larceny for each defendant. Judge Fountain arrested judgment on the guilty verdicts for felonious breaking or entering and larceny as well as for armed robbery.

The trial court instructed the jury that it could find the defendants guilty of murder in the first degree if it found that Mr. Setzer had been killed by the defendants while they were in the process of committing armed robbery or in the perpetration of a breaking or entering with the intent to commit larceny. As the underlying felonies supporting the verdict of guilty of murder in the first degree, then, the convictions for armed robbery and breaking or entering necessarily merged with the conviction for murder. The constitutional prohibition against double jeopardy therefore would have prevented imposition of sentences on these predicate felonies as long as sentences had been imposed on the greater crime of felony murder. See State v. Silhan, 302 N.C. 223, 275 S.E.2d 450 (1981); State v. Squire, 292 N.C. 494, 234 S.E.2d 563 (1977); State v. Thompson, 280 N.C. 202, 185 S.E.2d 666 (1972) (all addressing the merger of an underlying felony with the greater crime of murder in the first degree). See also State v. Dudley, 319 N.C. 656, 356 S.E.2d 361 (1987); State v. Belton, 318 N.C. 141, 347 S.E.2d 755 (1986); State v. Freeland, 316 N.C. 13, 340 S.E.2d 35 (1986) (all applying double jeopardy protection in simultaneous convictions for sexual offenses and first degree kidnapping based on the underlying sexual offense).

Defendants appealed their convictions which were affirmed in part and reversed in part by this Court. State v. Pakulski, 319 N.C. 562, 356 S.E.2d 319. In that decision, this Court expressly found no error as to the convictions for armed robbery, felonious breaking or entering, larceny of an automobile, and conspiracy to commit felonious breaking or entering. The Court made no express findings regarding the validity of the conviction for felonious larceny which had been included as a separate count on the indictment for felonious breaking or entering. We note, however, that defendants made no specific assignments of error nor did they put forth any arguments challenging the validity of that conviction

STATE v. PAKULSKI

[326 N.C. 434 (1990)]

other than two general requests for new trials ·on all charges which were denied by this Court.

Error was found on the conviction for murder in the first degree and a new trial was granted on that charge. The new trial was granted because this Court found that the defendants had been convicted under a theory of felony murder with armed robbery and felonious breaking or entering both constituting the underlying predicate felonies. There was insufficient evidence on the record that defendants had possessed a weapon during the original break-in to support submission of felony murder to the jury using felonious breaking or entering as the underlying felony. *State v. Fields*, 315 N.C. 191, 337 S.E.2d 518 (1985). Although the Court found that armed robbery had been properly submitted as a predicate felony on the facts of the case, since both felonies had been submitted to the jury it was impossible to tell if the jury had, in fact, relied only on the erroneously submitted breaking or entering charge. Consequently, the case was remanded and a new trial ordered on the felony murder charge.

On remand, the retrial of the charge of murder in the first degree using armed robbery as the predicate felony ended in a mistrial when the jury was unable to reach a verdict. At that point, the state prayed judgment on the felonious breaking or entering and felonious larceny convictions. The Honorable William H. Freeman, judge presiding, entered judgment imposing consecutive ten-year sentences on these two charges.

The sole question for review on this appeal is whether it was proper under the facts of this case for Judge Freeman to have imposed sentences for the underlying felonies after Judge Fountain had arrested judgment on the guilty verdicts which had been returned on those charges. We conclude that the sentencing was proper in this case because judgment was arrested only because "these offenses formed the offenses upon which the convictions of felony murder were predicated." *State v. Pakulski*, 319 N.C. at 564, 356 S.E.2d at 321. Once a new trial was ordered on appeal of the felony murder conviction, it was no longer necessary to arrest judgment on the underlying felonies. When the state elected not to pursue the charge of murder in the first degree based on felonious breaking or entering and felonious larceny as the predicate felonies, there was no legal impediment to the imposition of sentence on those convictions.

STATE v. PAKULSKI

[326 N.C. 434 (1990)]

As long ago as 1803, William Blackstone noted in his Commentaries that "[a]rrests of judgment arise from *intrinsic* causes, appearing upon the face of the record." 3 W. Blackstone, Commentaries *393. In our own jurisdiction, "[a] motion in arrest of judgment is generally made after verdict to prevent entry of judgment based on a defective indictment or some fatal defect on the face of the record proper." *State v. Davis*, 282 N.C. 107, 117, 191 S.E.2d 664, 670 (1972). *See also State v. Brown*, 315 N.C. 40, 337 S.E. 2d 808 (1985); *State v. McNeil*, 280 N.C. 159, 185 S.E.2d 156 (1971). A court is free to arrest judgment in a proper case on its own motion, as was the case here, and an arrest of judgment has been recognized as appropriate in a number of situations:

> A motion in arrest of judgment is proper when it is apparent that no judgment against the defendant could be lawfully entered because of some fatal error appearing in (1) the organization of the court, (2) the charge made against the defendant (the information, warrant or indictment), (3) the arraignment and plea, (4) the verdict, and (5) the judgment. (Citations omitted.) *State v. Perry*, 291 N.C. 586, 589, 231 S.E.2d 262, 265 (1977).

*State v. McGaha*, 306 N.C. 699, 702, 295 S.E.2d 449, 451 (1982).

Defendants argue that the effect of arresting judgment is necessarily and uniformly to vacate the verdict and return a criminal defendant to the position he had been in prior to trial. While we agree that in certain cases an arrest of judgment does indeed have the effect of vacating the verdict, we find that in other situations an arrest of judgment serves only to withhold judgment on a valid verdict which remains intact. When judgment is arrested because of a fatal flaw which appears on the face of the record, such as a substantive error on the indictment, the verdict itself is vacated and the state must seek a new indictment if it elects to proceed again against the defendant. *State v. Benton*, 275 N.C. 378, 167 S.E.2d 775 (1969); *State v. Cook*, 272 N.C. 728, 158 S.E.2d 820 (1968); *State v. Covington*, 267 N.C. 292, 148 S.E.2d 138 (1966). *See also* 21 Am. Jur. 2d *Criminal Law* § 524 (1981) ("The granting of a motion in arrest of judgment does not operate as an acquittal but only places the defendant in the same situation in which he was before the prosecution was begun."). However, we hold that when judgment is arrested on predicate felonies in a felony murder case to avoid a double jeopardy problem, the guilty verdicts on the underlying felonies remain on the docket and judgment can

be entered if the conviction for the murder is later reversed on appeal, and the convictions on the predicate felonies are not disturbed upon appeal.

Our decision is supported in a number of related situations where this Court has recognized that an arrest of judgment does not void the underlying verdict. For example, in the lead case of *State v. Hall*, 183 N.C. 806, 112 S.E. 431 (1922), the trial court had arrested judgment on a manslaughter conviction under a mistaken assumption that both defendants could not be found guilty simultaneously. On appeal, this Court ruled that there was no legal impediment to the simultaneous convictions and therefore it set aside the arrest of judgment and remanded the case to superior court for sentencing on the guilty verdict "which was left standing upon the docket." *State v. Hall*, 183 N.C. at 813, 112 S.E. at 435. Similarly, in *State v. Davis*, 290 N.C. 511, 227 S.E.2d 97 (1976), this Court arrested judgment on appeal for the first time in cases where the death penalty had been imposed but had later been declared unconstitutional. Those cases were remanded to the trial court for imposition of life sentences upon the verdicts of guilty which were left untouched by the arrest of judgment of the sentence of death. Finally, in a series of cases involving multiple convictions for kidnapping and various sexual offenses, this Court held that judgment on either the first degree kidnapping charge or the underlying sexual offense upon which the kidnapping conviction had been based had to be arrested to avoid a double jeopardy problem. In those opinions, this Court remanded with directions to the trial court that it could decide to arrest judgment on the first degree kidnapping charge and instead enter judgment on a second degree kidnapping offense. By inference, then, it was recognized that defendant could be sentenced on second degree kidnapping even though judgment had been arrested on the first degree kidnapping conviction. *See, e.g., State v. Dudley*, 319 N.C. 656, 356 S.E.2d 361; *State v. Belton*, 318 N.C. 141, 347 S.E.2d 755. *See also* 23A C.J.S. *Criminal Law* § 1453 (1989) ("Arrest of judgment is the act of staying or withholding judgment for errors appearing on the face of the record.").

Defendants argue that even if an arrest of judgment does not operate to void a verdict where judgment was arrested to avoid a double jeopardy problem, under the facts of this case it is impossible to determine the underlying reasons for Judge Fountain's decision to arrest judgment. Hence, defendants contend that

reversal on appeal of the felony murder conviction should not free the trial court to sentence on the underlying felonies. We disagree with defendants' contention that Judge Fountain's rationale for arresting judgment cannot be found on the record. To the contrary, we find that the law of this case on this question was clearly settled in the prior appeal, *State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319, and is controlling here.

In the prior appeal, this Court stated, "[j]udgments were arrested on the offenses of armed robbery and felonious breaking or entering, as these offenses formed the offenses upon which the convictions of felony murder were predicated." *Id.* at 562, 356 S.E. 2d at 321. Later in the opinion, the Court noted again, "we hold that defendants are entitled to a new trial on the first-degree murder charges because of the improper submission of breaking or entering as a possible predicate felony of the felony murder." *Id.* at 576, 356 S.E.2d at 327. Defendants say that these comments in the prior ruling amount to mere *dicta*, but we disagree. The trial judge clearly instructed the jury in his final charge that breaking or entering could be considered as the underlying felony to the felony murder charge. As no other assignments of error were brought forward by the defendants as to this charge nor found by this Court in reviewing the record on appeal in this case and in the prior case, the only explanation for the arrest of judgment was that it was ordered by Judge Fountain because the breaking or entering conviction had merged with the greater crime of felony murder.

Although Judge Fountain had not instructed the jury that felonious larceny could support the felony murder conviction and this Court did not state in its prior decision that the larceny charge constituted a predicate felony, we find that an examination of the record on this appeal reveals that judgment on that charge was similarly arrested because Judge Fountain considered it to be support for the felony murder conviction. For both defendants, the charge of larceny of the miscellaneous items taken from Dr. Abbate's office was included as a separate count on the same indictment as the charge of breaking or entering. Similarly, the verdict sheets returned by the jury stated that each defendant was found guilty of "felonious breaking, entering and larceny." Thus, despite the fact that the indictment clearly charged each defendant with breaking or entering and with larceny as separate offenses, they began to be treated together semantically. Since Judge Fountain only

**STATE v. PAKULSKI**

[326 N.C. 434 (1990)]

instructed the jury that breaking or entering and armed robbery were to be considered as predicate felonies to the murder charge, he would have been free to enter judgment and sentence on the larceny charge without implicating the double jeopardy clause. Nonetheless, he elected to arrest judgment on this charge as well. Defendants raised no question as to the validity of the convictions for the larceny charges on the first appeal when it was appropriate to do so, other than to raise two questions regarding the trial as a whole which were not upheld by this Court. Our own close examination of the record reveals no error on the face of the record which would justify an arrest of judgment. We therefore conclude that Judge Fountain arrested judgment on this charge out of the mistaken belief that he was compelled by law to do so. As was the situation in *State v. Hall*, 183 N.C. 806, 112 S.E. 431, where the trial court recognizes the validity of a verdict by arresting judgment rather than vacating the verdict but arrests judgment under a mistaken belief of law, there is no legal impediment to imposition of a proper judgment and sentence when it is later held on appeal that the arrest of judgment was made under a mistake of law.

We note that defendants argue strenuously that there might well be reasons for Judge Fountain's decision to arrest judgment other than to avoid a double jeopardy problem. Defendants contend that the lack of argument on any errors in the convictions for breaking or entering and larceny on the prior appeal should not be taken as an indication that no such errors exist. To the contrary, defendants speculate that Judge Fountain might have determined that the five and one-half year delay between the date of the offenses at issue and the issuance of an arrest warrant and subsequent indictment against the defendants constituted a violation of due process. Similarly, they argue that the verdict forms used were fatally defective because they listed breaking or entering *and* larceny together, rather than listing each separately. Furthermore, defendants contend that Judge Fountain might have concluded that his instructions to the jury were insufficient as he failed to set forth explicitly the various elements of both charges. Finally, defendants speculate that Judge Fountain could have arrested judgment because he felt the constitutional protections against double jeopardy precluded the imposition of separate judgments and sentences for breaking or entering and larceny. We find no support on the record to indicate that any of these conjectures

are valid nor that they constituted the rationale underlying Judge Fountain's decision to arrest judgment. In particular, we note that any defect on the verdict sheet operated in defendants' favor because the sheet as written required the jury to find defendants guilty of *both* charges in order to return a guilty verdict as to either. At oral argument, defendants further contended that any errors in the convictions on these charges have not yet been appealed. It is the defendants' position that since judgment had been arrested on these convictions, they had no need to appeal errors in the trials. We disagree and note that defendants in fact requested new trials on all charges, including these, in two arguments presented in the prior appeal. Their arguments were rejected and a new trial was ordered on the felony murder charge alone for the reasons previously cited. The opportunity to appeal errors in the larceny and breaking or entering charges was afforded defendants in the prior case. They availed themselves of that opportunity and will not now be heard to argue that the appeal was not complete.

Defendants' final contention is that Judge Freeman, the sentencing judge, lacked the authority to set aside the prior order of Judge Fountain arresting judgment on the verdicts of guilty of breaking or entering and larceny. Relying on *Michigan National Bank v. Hanner*, 268 N.C. 668, 151 S.E.2d 579 (1966), defendants argue that "[t]he power of one judge of the superior court is equal to and coordinate with that of another, and a judge holding a succeeding term of court has no power to review a judgment rendered at a former term on the ground that the judgment is erroneous." *Id.* at 670, 151 S.E.2d at 580. While this quote is a correct statement of the law, we find it inapposite in this situation. We hold that in the case before us, Judge Freeman did not overrule or reverse Judge Fountain's order, nor did he determine that Judge Fountain's order was erroneous. Rather, once this Court reversed the felony murder conviction which had compelled the arrest of judgment on the breaking or entering and larceny charges, the legal impediment to entry of judgment and sentencing on those charges was removed. It has long been recognized that where circumstances prevent pronouncement of a proper sentence during the term of court in which a case is tried, the court may impose sentence at a subsequent term. "In this jurisdiction the right to do so is not denied either by statute or usage." *State v. Graham*, 225 N.C. 217, 219, 34 S.E.2d 146, 147 (1945). Under the facts of this case, then, we hold that once this Court reversed the conviction on

the felony murder charge in the prior appeal, on remand Judge Freeman was free to enter judgment and impose sentence on motion of the state on the convictions for felonious breaking or entering and felonious larceny.

Reversed.