INMAN, Judge.
 

 *394
 
 An indictment for felonious larceny is fatally defective when it fails to allege that property was taken from an entity capable of owning property. When the record indicates that a trial court arrested a judgment of conviction for double jeopardy-related concerns and no fatal defect of the conviction appears on the face of the record, the appellate court may treat the judgment as set aside rather than vacated and remand for the trial court's further consideration of the conviction.
 

 Daniel Christian Garner ("Defendant") appeals from a judgment entered 3 September 2015 following a jury trial and verdicts finding him guilty of felonious larceny from a local country club and felonious possession of stolen goods. On appeal, Defendant argues the indictment for felonious larceny was fatally defective because the indictment failed to
 
 *395
 
 allege that the entity from which the property was taken was capable of owning property and that the trial court violated the Confrontation Clause of the Sixth Amendment when it admitted testimony related to an anonymous call received by club employees. Defendant further argues that because the trial court arrested judgment on his conviction for possession of stolen goods without stating its reasoning, no court can reinstate that judgment. After careful review, we vacate Defendant's larceny charge and remand for resentencing under the possession of stolen goods charge.
 

 Facts and Procedural History
 

 Defendant was indicted on 4 November 2013 for felonious larceny and felonious possession of stolen goods. The indictment charged Defendant with having stolen twelve golf cart batteries and a pole saw from "Pinewood Country Club." Defendant was tried before a jury between 31 August 2015 and 3 September 2015.
 

 At trial, the State offered evidence including the testimony of Defendant's half-brother Tony Garner, the owner of M.J.'s Recycling in Lexington, North Carolina, a Davidson County Sheriff's Office detective, and two employees of the Pinewood Country Club, Steven Richau and Farrell Harris. Steven Richau and Farrel Harris testified about the contents of an anonymous phone call they received following the vandalism and theft of twelve golf cart batteries from the Pinewood Country Club. Mr. Richau testified: "[The caller] then proceeded by stating that 'I don't want to be involved. I don't want anything out of it, but I overheard two guys at the service station earlier in the morning talking about some batteries and a mower they had taken from Pinewood.' " Mr. Richau further testified that the caller told him "that the Garner boys said they were taking the batteries to Lexington Recycling...." Mr. Harris similarly testified as to the contents of the call, stating "[The caller] said he stopped at the gas station and overheard some guys talking about batteries. [The caller] kept saying he wanted to remain anonymous. [The caller] then said we[, Pinewood Country Club,] needed to call and check at Lexington Recycling. [The caller] said he knew their names, and they were Tony and Dale Garner...."
 

 *758
 
 Defendant's trial counsel objected to this testimony on the grounds that such testimony amounted to a violation of the Confrontation Clause of the Sixth Amendment. The trial court overruled trial counsel's objection and offered the following limiting instructions. In regard to Mr. Richau's statement the trial court explained:
 

 *396
 
 THE COURT: ... Ladies and gentlemen of the jury, I need to give a brief limiting instruction. The Court is not allowing the statement of any caller or anonymous caller that this witness may be referring to for the truth of the matter as set forth in the statement that is going to be given to you, but only to show why the officers did what they did or the course of the investigation based on the statement of the caller.
 

 So, again, you are not to consider any statement by an anonymous caller for the truth of the matter asserted in the statement.
 

 As to Mr. Harris's statement, the trial court stated:
 

 THE COURT: All right. Ladies and gentlemen, the same as the other witness, the Court is not allowing the statement of any anonymous caller for the truth of the matter that may be set forth in the statement that's gonna be testified to, but only to show why the officers did what they did or the course of the investigation based upon the statement.
 

 So, again, you're not to consider any statements of the anonymous caller for the truth of the matter that's asserted....
 

 Following each limiting instruction, the trial court verified by asking for a show of hands that the jury understood the instruction.
 

 The jury found Defendant guilty of both offenses and the trial court sentenced him to a prison term of seven to eighteen months. The trial court then arrested judgment on Defendant's conviction for possession of stolen goods. Defendant gave notice of appeal in open court.
 

 Analysis
 

 I. The Indictment
 

 Defendant first argues the indictment is fatally defective because it does not allege that "Pinewood Country Club" was an entity capable of owning property. The State concedes this issue and we agree.
 

 A. Larceny
 

 "Larceny of goods of the value of more than one thousand dollars ($1,000) is a Class H felony."
 
 N.C. Gen. Stat. § 14-72
 
 (a) (2015). " 'The essential elements of larceny are: (1) taking the property of another; (2) carrying it away; (3) without the owner's consent; and (4) with the intent
 
 *397
 
 to deprive the owner of the property permanently.' "
 
 State v. Sheppard
 
 ,
 
 228 N.C.App. 266
 
 , 269,
 
 744 S.E.2d 149
 
 , 151 (2013) (quoting
 
 State v. Wilson
 
 ,
 
 154 N.C.App. 686
 
 , 690,
 
 573 S.E.2d 193
 
 , 196 (2002) ). "To be valid a larceny indictment must allege the ownership of the [stolen] property either in a natural person or a legal entity capable of owning (or holding) property."
 
 State v. Campbell
 
 ,
 
 368 N.C. 83
 
 , 86,
 
 772 S.E.2d 440
 
 , 443 (2015) (alteration in original) (internal quotation marks and citation omitted).
 

 "When alleging ownership in an entity, an indictment must specify that the owner, 'if not a natural person, is a corporation or otherwise a legal entity capable of owning property,' unless the entity's name itself 'imports an association or a corporation capable of owning property.' "
 

 Id.
 

 (quoting
 
 State v. Thornton
 
 ,
 
 251 N.C. 658
 
 , 661,
 
 111 S.E.2d 901
 
 , 903 (1960) ). Our courts have held that terms such as "church," "corporation," "incorporated," "limited," or "company," or their abbreviated forms, are sufficient for identifying an entity in an indictment.
 
 Id.
 
 at 86-87,
 
 772 S.E.2d at 443-44
 
 . The term "country club" has not been recognized by statute or by our courts as sufficient for identifying an entity as being capable of owning property, and we do not recognize it today. An indictment that fails to sufficiently allege an entity capable of owning property is "fatally defective."
 
 Thornton
 
 ,
 
 251 N.C. at 662
 
 ,
 
 111 S.E.2d at 904
 
 .
 

 Here, the indictment charges Defendant with larceny of "the personal property of
 
 Pinewood Country Club
 
 ...." (emphasis added). The parties agree, and we hold, that this identification is insufficient and the indictment for felonious larceny is fatally defective.
 

 *759
 
 Accordingly, we vacate Defendant's larceny conviction.
 

 B. Possession of Stolen Goods
 

 The State contends we should remand Defendant's conviction for possession of stolen goods to the trial court for resentencing. Defendant asserts that because the trial court arrested judgment on this conviction without specifying a reason for doing so, the conviction is deemed vacated and beyond appellate review. We disagree.
 

 A trial court's arrest of a judgment has one of two effects: (1) to vacate the underlying judgment, or (2) to withhold the entry of judgment based on a valid jury verdict.
 
 State v. Pendergraft
 
 ,
 
 238 N.C.App. 516
 
 , 528,
 
 767 S.E.2d 674
 
 , 683 (2014) (citing
 
 State v. Reeves
 
 ,
 
 218 N.C.App. 570
 
 , 575,
 
 721 S.E.2d 317
 
 , 321 (2012) (citing
 
 State v. Pakulski
 
 ,
 
 326 N.C. 434
 
 , 439,
 
 390 S.E.2d 129
 
 , 132 (1990) )).
 

 If a judgment is arrested because of a fatal flaw which appears on the face of the record, such as a substantive error on the indictment,
 
 *398
 
 the trial court's decision to arrest judgment will "vacate the defendant's conviction and preclude the entry of a final judgment which is subject to review on appeal."
 

 Id.
 

 (quoting
 
 Reeves
 
 ,
 
 218 N.C.App. at 575-76
 
 ,
 
 721 S.E.2d at 321-22
 
 (citations omitted)). On the other hand, if a trial court arrests judgment "for the purpose of addressing double jeopardy or other concerns, such as a situation in which the defendant has been convicted of committing a predicate felony in a case in which he or she has also been convicted of first degree murder on the basis of the felony murder rule, or convicted of a charge used to enhance punishment for a related offense," the conviction is not vacated.
 
 Id.
 
 at 528-29,
 
 767 S.E.2d at 683
 
 (citations omitted). "In the event that the trial court arrests judgment for the first of these two reasons, we lack the authority to review any challenge that [a d]efendant might seek to lodge against the underlying conviction on appeal given that the underlying conviction has been vacated."
 
 Id.
 
 at 529,
 
 767 S.E.2d at
 
 683-84 (citing
 
 Reeves
 
 ,
 
 218 N.C.App. at 576
 
 ,
 
 721 S.E.2d at
 
 322 ). When a judgment is arrested for the second reason, "the underlying guilty verdict remains intact so that judgment can be entered based on that verdict in the event that (1) the conviction for the murder or related charge is overturned in subsequent proceedings and (2) the verdict with respect to which judgment has been arrested is not disturbed on appeal."
 
 Id.
 
 at 529,
 
 767 S.E.2d at
 
 683 (citing
 
 Pakulski
 
 ,
 
 326 N.C. at 439-40
 
 ,
 
 390 S.E.2d at
 
 132 ).
 

 Our initial task is to determine the reason the trial court arrested judgment on Defendant's conviction for possession of stolen goods.
 

 A careful review of the record indicates the trial court failed to expressly explain the underlying reason for its decision. "[I]n the absence of some indication that the trial court's decision to arrest judgment stemmed from double jeopardy-related concerns, the effect of the decision to arrest judgement is to vacate the underlying conviction and preclude subsequent appellate review."
 
 Pendergraft
 
 ,
 
 238 N.C.App. at 530
 
 ,
 
 767 S.E.2d at
 
 684 (citing
 
 State v. Stafford
 
 ,
 
 45 N.C.App. 297
 
 , 300,
 
 262 S.E.2d 695
 
 , 697 (1980) ). Whether some indication of double jeopardy-related concerns exists requires this Court to conduct a careful review of the record.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 Pakulski
 
 ,
 
 326 N.C. at 442
 
 ,
 
 390 S.E.2d at 133
 
 ("Our own close examination of the record reveals no error on the face of the record which would justify an arrest of judgment. We therefore conclude that Judge Fountain arrested judgment on this charge out of the mistaken belief that he was compelled by law to do so.");
 
 cf.
 

 Pendergraft
 
 ,
 
 238 N.C.App. at 530
 
 ,
 
 767 S.E.2d at 684
 
 ("After carefully reviewing the record, we see no indication that the trial court's decision to vacate the judgment in the felonious breaking or entering case rested upon double jeopardy-related considerations.").
 

 *399
 
 Here, the record provides some indication that the trial court's decision to arrest judgment on the possession of stolen goods conviction was predicated on double jeopardy concerns. The transcript indicates that following the jury verdicts and the trial court's pronouncement of a prison sentence, counsel for the parties approached the bench
 
 *760
 
 to confer with the trial court. Following this conference, the trial court stated:
 

 All right. With regard to the second sentence, with regard to the felony possession of stolen goods worth more than a thousand dollars, the Court will arrest judgment. Strike any judgment the Court entered on that. The Court's just entering the sentence on the felonious larceny, and that was an active sentence.
 

 Trial courts are required to arrest judgments of convictions for either possession of stolen goods or larceny when a defendant is convicted of those charges in relation to the same incident.
 
 See, e.g.,
 

 State v. Szucs
 
 ,
 
 207 N.C.App. 694
 
 , 702-03,
 
 701 S.E.2d 362
 
 , 368 (2010) (citations omitted) (arresting a defendant's conviction for felonious possession of stolen goods when he was convicted of larceny and possession of stolen goods for the same property, noting: "[o]ur Supreme Court has held that the legislature did not intend to punish a defendant for possession of the same goods that he stole"). Defendant did not argue before the trial court, nor does he argue on appeal, nor have we discovered in our review, any error on the face of the record related to the possession of stolen goods charge that would justify vacating the judgment.
 
 [1]
 
 Accordingly, we conclude that the trial court arrested judgment to avoid double jeopardy and the underlying guilty verdict remains intact. We therefore remand for resentencing on the possession of stolen goods conviction.
 

 II. Anonymous Phone Call
 

 Defendant argues that the trial court violated the Confrontation Clause of the Sixth Amendment when it admitted testimony about the anonymous phone call identifying Defendant as a perpetrator of the crimes charged. We disagree.
 

 *400
 
 "It is well-settled that
 
 de novo
 
 review is ordinarily appropriate in cases where constitutional rights are implicated."
 
 State v. Tate
 
 ,
 
 187 N.C.App. 593
 
 , 599,
 
 653 S.E.2d 892
 
 , 897 (2007) (internal quotation marks and citations omitted). "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2015). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 513,
 
 723 S.E.2d 326
 
 , 331 (2012) (alteration in original) (citations omitted). Our question becomes whether there was a violation of the Sixth Amendment, and if so, whether that error was harmless beyond a reasonable doubt.
 

 A violation of the Confrontation Clause occurs when a "testimonial" statement from an unavailable witness is introduced against a defendant who did not have a prior opportunity to cross-examine the declarant.
 
 Crawford v. Washington
 
 ,
 
 541 U.S. 36
 
 , 68,
 
 124 S.Ct. 1354
 
 , 1374,
 
 158 L.Ed.2d 177
 
 , 203 (2004) ("Where testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."). The Supreme Court has provided some guidance as to whether evidence is "testimonial," including the following description: "
 
 ex parte
 
 in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially[.]"
 

 Id.
 

 at 51
 
 ,
 
 124 S.Ct. at 1364
 
 ,
 
 158 L.Ed.2d at 193
 
 (internal quotation marks and citations omitted). This Court has held that "where evidence is admitted for a purpose other than the truth of the matter asserted, the protection afforded by the Confrontation
 
 *761
 
 Clause against testimonial statements is not at issue."
 
 State v. Hayes
 
 ,
 
 239 N.C.App. 539
 
 , 543,
 
 768 S.E.2d 636
 
 , 640-41 (2015) (internal quotation marks and citation omitted).
 

 Here, the trial court admitted the statements concerning the anonymous call for a purpose other than the truth of the matter asserted and identified this limited purpose for the jury. The trial court also noted the jurors' recognition and understanding of the limiting instructions. Because the testimony was admitted for a purpose other than the truth of the matter asserted, it falls outside the protections afforded by the Confrontation Clause of the Sixth Amendment.
 

 In any event, assuming
 
 arguendo
 
 that the statements were testimonial, we are satisfied that any error that may have occurred was
 
 *401
 
 harmless beyond a reasonable doubt. Tony Garner's girlfriend testified that Defendant conveyed to her several different versions of the story of his involvement with the batteries, including one in which "Tony had went and stole [the batteries] from Pinewood" and another in which Defendant and Tony "went together." Tony Garner testified that he "had an idea [that the batteries] might be stolen" when Defendant drove up with the batteries in his truck and that Defendant said he "ground the numbers off" of the batteries. Martin Lyon, the owner of the recycling business, testified that he witnessed Defendant "ripping stickers off the top of the batteries[,]" and acting in a manner that resulted in Mr. Lyon calling Detective Barnes to ask if "there [had] been any report of golf cart batteries stolen? 'Cause [he had] two gentlemen here that's ripping stickers off, and this doesn't add up." When Detective Barnes contacted Mr. Lyon a few days later to inform him there was a report of stolen batteries from Asheboro, Mr. Lyon testified that he told Detective Barnes "remember when I was telling you about the batter-the guys down there stripping off-things off-stickers off the batteries? I think this may be them." This testimony along with the surveillance footage of Defendant at the recycling center provided such overwhelming evidence of Defendant's guilt of possession of stolen goods any error in admitting the content of the anonymous phone call was harmless beyond a reasonable doubt.
 

 Conclusion
 

 For the forgoing reasons, we vacate Defendant's conviction for felonious larceny and remand for sentencing on the possession of stolen goods conviction.
 

 VACATED AND REMANDED.
 

 Judges BRYANT and TYSON concur.
 

 [1]
 

 While the indictment's failure to specify Pinewood Country Club as an entity capable of owning property is fatal to the charge of larceny, it is not fatal to the charge of possession of stolen goods.
 
 State v. Patterson
 
 ,
 
 194 N.C.App. 608
 
 , 614-15,
 
 671 S.E.2d 357
 
 , 361 (2009),
 
 overruled on other grounds by
 

 State v. Campbell
 
 ,
 
 368 N.C. 83
 
 ,
 
 772 S.E.2d 440
 
 (2015) ("Because the crime of possession of stolen goods does not require the taking of personal property from another, an indictment for this crime is not required to signify that the entity who is allegedly wronged is capable of owning property.").